COURT OF CHANCERY
OF THE
STATE OF DELAWARE

ABIGAIL M. LEGROW
MASTER IN CHANCERY

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report:  July 1, 2014
Submitted:  June 11, 2014

Alan L. Lucas
Linn County Correctional Center
P.O. Box 608
Cedar Rapids, IA 52406-0608

Jackie and Della Miller
1120 37th Street
Des Moines, IA 50311

Dwight and Carol Miller
103 15th Street SE
Mason City, IA 50401

Francis and Gwen Miller
204 12th Street NW
Mason City, IA 50401

Theodore J. Tacconelli
Rick S. Miller
Ferry Joseph & Pearce, P.A.
P.O. Box 1351
Wilmington, DE 19899

Re:     *Alan L. Lucas, et al. v. Alan Hanson, et al.*
        C.A. No. 9424-ML

Dear Counsel and Parties:

I am in receipt of the defendants' motions to dismiss the amended complaint in the above-captioned action, along with the plaintiff's response to those motions.  For the reasons that follow, I recommend that the Court dismiss without prejudice the amended complaint because the plaintiff has not alleged sufficient facts to establish that (i) he has standing to maintain this action, and (ii) this Court has personal jurisdiction over certain of the defendants.  This is my final report on these motions.

## BACKGROUND

The following facts are drawn from the complaint, giving the plaintiff the benefit of all reasonable inferences. This case involves Covenant Investment Fund LP ("Covenant"), a Delaware limited partnership created in 2007. Prosapia Capital Management LLC ("Prosapia Capital") is the general partner and a limited partner of Covenant.[1] Prosapia Capital is a wholly-owned subsidiary of Prosapia Financial LLC ("Prosapia Financial").[2] The plaintiff, Alan Lucas ("Lucas") is the operating manager of both Prosapia Capital and Prosapia Financial and is a member of Prosapia Financial.[3]

The defendants are current or "disassociated" limited partners of Covenant, none of whom are residents of Delaware.[4] The complaint does not allege that any of the defendants participated in the management of Covenant. According to the Amended Complaint, after Prosapia Capital became general partner, it expended some of Covenant's funds to conduct an audit, hire contractors, and purchase a corporate vehicle, and took steps to liquidate Covenant's fiber optic utility rights and assets, with an ultimate goal of purchasing a large hotel and convention center.[5] Some of the limited partners objected to this plan for Covenant's future. In June 2011, Lucas was charged in

---

[1] Am. Compl. for Declaratory J. and Prelim. Inj. (hereinafter "Am. Compl.") ¶ 16
[2] *Id.* ¶ 17.
[3] *Id.* ¶¶ 2, 19.
[4] *Id.* ¶¶ 3-11. The term "disassociated" is drawn from the complaint. The plaintiff uses the term to refer to limited partners who allegedly received final distributions and withdraws from Covenant in 2009. *Id.* ¶ 23.
[5] *Id.* ¶ 24

Iowa with theft and ongoing criminal conduct associated with the expenditure and liquidation of Covenant's funds and assets.[6]

Lucas was convicted on October 23, 2013 and was sentenced on March 14, 2014 to 25 years in prison. In connection with the criminal proceedings, Iowa declared "that the cash held in [Covenant's] account was the property of the [named defendants]," and should have been distributed to the named defendants when Prosapia Capital became Covenant's general partner.[7] After his conviction, but before the sentencing, Lucas filed this action seeking declaratory and injunctive relief and arguing that "Iowa's attempt to force distributions of company assets is the regulation of the internal affairs of a Delaware entity with no ties to Iowa in violation of the commerce clause, due process clause and full faith and credit clause of the United States Constitution."[8] Although the Amended Complaint appears to seek declaratory and injunctive relief regarding whether Iowa's prosecution of Lucas violated his constitutional rights,[9] Lucas maintains that he seeks only an injunction prohibiting the named defendants from receiving Covenant's funds as restitution, explaining that "the actions by the State of Iowa and the underlying constitutional implications are only alleged to establish that the only proper way for the

---

[6] *Id.* ¶ 26.

[7] *Id.*

[8] *Id.*

[9] *See, e.g.* Am. Compl. Prayer for Relief p. 20 (alleging that "[t]he State of Iowa violated the due process, full faith and credit, and commerce clauses of the United States Constitution when Iowa initiated a criminal prosecution of Lucas for actions undertaken as Operating Manager of the General Partner of Covenant. In essence, Lucas's conduct that is not only legal, but is required under Delaware partnership law, has been deemed illegal under Iowa law"); *id.* p. 22, ¶ 4 (seeking a declaration that "[w]hen the State of Iowa imposed criminal sanctions on Alan Lucas for directing the partnership to not issue distributions or dissolve the partnership, it was acting extraterritorially in violation of the Commerce Clause of the United States Constitution").

defendants to receive a distribution or disbursement from [Covenant] is by initiating a derivative action in this Court."[10] The defendants filed a series of motions to dismiss the Amended Complaint. Alan Hanson, Patty Hanson, and Marcella Hosch moved to dismiss (the "Hanson/Hosch Motion") on the basis that Lucas lacks standing to pursue this action because there is no allegation in the Amended Complaint that Lucas is a limited or general partner of Covenant. Dwight Miller, Carol Miller, Jackie Miller, Della Miller, Francis Miller, and Gwen Miller (collectively, the "Miller Defendants") moved to dismiss the claims against them for lack of personal jurisdiction and for failure to state a claim.

## ANALYSIS

Pursuant to Rule 12(b)(6), this Court may grant a motion to dismiss for failure to state a claim if a complaint does not assert sufficient facts that, if proven, would entitle the plaintiff to relief. The governing pleading standard in Delaware to survive a motion to dismiss is "reasonable 'conceivability.'"[11] That is, when considering such a motion, a court must

> accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as "well-pleaded" if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under

---

[10] Lucas's Resp. to Defs. Hansons' and Hosch's Motion to Dismiss (hereinafter "Resp. to Hanson/Hosch") at 2-4.

[11] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011) (footnote omitted).

any reasonably conceivable set of circumstances susceptible of proof.[12]

This "conceivability" standard asks whether there is a "possibility" of recovery.[13] If the well-pleaded factual allegations of the complaint would entitle the plaintiff to relief under a reasonably conceivable set of circumstances, the Court must deny the motion to dismiss.[14]

In response to the Hanson/Hosch motion, Lucas concedes the Amended Complaint does not allege that he is a limited partner of Covenant, but contends the absence of that allegation merely is an oversight, asserts that he is in fact a limited partner of Covenant, and urges the Court to "constructively amend" the Amended Complaint to add the allegation that Lucas has a limited partnership interest in Covenant.[15] On a motion to dismiss, however, I cannot look outside the complaint for facts to support it,[16] and there is no basis in this Court's rules or precedent for a "constructive amendment" to the pleadings at this stage in the proceedings. I therefore recommend that the Court dismiss the Amended Complaint without prejudice to Lucas's ability to file a second amended complaint. Although the Hanson and Hosch defendants urge that any such amendment would be futile because the claims Lucas seeks to pursue are derivative, and he is not a proper derivative plaintiff, those arguments were raised in the reply brief and are best

---

[12] *Id.* (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

[13] *Id.* at 537 & n.13.

[14] *Id.* at 536.

[15] Resp. to Hanson/Hosch at 5-6.

[16] *Shintom Co., Ltd. v. Audiovox Corp.*, 2005 WL 1138740, at *4 n.8 (Del. Ch. May 4, 2005).

considered on a more complete record after Lucas has been given an opportunity to respond.

The Miller Defendants also moved to dismiss on the basis that this Court lacks personal jurisdiction over them for purposes of deciding Lucas's claims.[17] When a defendant moves to dismiss for want of personal jurisdiction, it is the plaintiff's burden to show a basis for the Court to exercise jurisdiction over a nonresident defendant.[18] "In determining whether it has personal jurisdiction over a nonresident defendant, the court will generally engage in a two-step analysis. First, was service of process on the nonresident authorized by statute? Second, does the exercise of jurisdiction, in the context presented, comport with due process?"[19]

Lucas's response to the Miller Defendants' Motion to Dismiss does not identify the statute he contends authorized service of process over the Miller Defendants, although I presume he relies on the State's long arm statute, 10 *Del. C.* § 3104. Even if Lucas properly identified a statutory provision and alleged sufficient facts to meet the terms of that statute, however, he also makes no effort to satisfy any "minimum contacts" analysis. Instead, Lucas argues that the Miller Defendants consented to the jurisdiction of this Court by signing Covenant's partnership agreement.[20] Although a defendant may waive her defense based on personal jurisdiction by expressly consenting to jurisdiction

---

[17] The Hanson/Hosch motion does not raise personal jurisdiction as a basis for dismissal, and I therefore have not considered this Court's jurisdiction over those defendants.

[18] *Albert v. Alex. Brown Mgmt. Servs.*, 2005 WL 2130607, at *14 (Del. Ch. Aug. 26, 2005).

[19] *Id.* (citing *LaNuova D & B, S.P.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986)).

[20] Consolidated Resp. to Miller Defs. Mot. to Dismiss (hereinafter "Resp. to Miller Defs.") at 3, 4 (citing Sections 14.05 and 14.06 of the partnership agreement).

by contract,[21] and although such consent eliminates the need for a minimum contacts analysis,[22] Lucas has not filed with the Court a copy of the partnership agreement, and I therefore cannot determine whether the Miller Defendants in fact consented to jurisdiction. Because Lucas has not met his burden to establish a basis for this Court to exercise jurisdiction over the Miller Defendants, all of whom are residents of Iowa, I recommend that the Court grant the Miller Defendants' motion to dismiss, without prejudice to an amended pleading that establishes a basis by which the Court may exercise jurisdiction over those defendants.

## CONCLUSION

For the foregoing reasons, I recommend that the Court grant the motions to dismiss without prejudice. This is my final report and exceptions may be taken in accordance with Rule 144.

Sincerely,

/s/ *Abigail M. LeGrow*
Master in Chancery

---

[21] *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contrs.*, 768 A.2d 983, 987 (Del. Super. 2000); *see also Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 331 (Del. Ch. 2003) (stating that parties can choose to avail themselves of Delaware law through a forum selection clause); *cf. Del Pharm., Inc. v. Access Pharm., Inc.*, 2004 WL 1631355, at *1 (Del. Ch. July 16, 2004) (enforcing a forum selection clause, which chose New York as the exclusive forum for adjudication, to dismiss suit).
[22] *Hornberger*, 768 A.2d at 987; *USH Ventures v. Global Telesystems Group, Inc.,* 1998 WL 281250, at *8 (Del. Super. Ct. May 21, 1998).